(No. 2403—

PETER J. CROWLEY COMPANY, A CORPORATION, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed June 15, 1939.*

TAYLOR, MILLER, BUSCH & BOYDEN, for claimant.

JOHN E. CASSIDY, Attorney General; MURRAY F. MILNE, Assistant Attorney General, for respondent.

Mr. Justice Yantis delivered the opinion of the court:

Claimant herein seeks an award of $11,580.54, together with interest thereon at five (5) per cent per annum from the 28th day of November, 1932, said sum representing the alleged cost, over and above the contract price, which claimant incurred in the replacement of peat in the construction of 6.939 miles of S. B. I. Route No. 53 in Cook and DuPage counties. The contract in question was made in April, 1932, and under the terms thereof there was incorporated therein the Notice to Contractors, Special Provisions, Proposal, Contract Bond, Plans, and the Standard Specifications for Road and Bridge Construction adopted by the Department of Public Works & Buildings under date of January 2, 1932.

The record discloses that prior to the proposal and contract in question, respondent had on several other occasions requested bids for the construction of the section involved. In the first request for bids in May, 1931 the amount of peat replacement was approximated at 75,500 cubic yards. In August and September of 1931 bids were again requested and peat replacement was approximated at 2,500 cubic yards. The change in the estimated amount of peat replacement was due to a proposed line change in the route in order that certain peat deposits might be eliminated. The original plans indicated peat between Stations 141+00 and 152+00 at a maximum depth of 24½ feet; also between Stations 213+00 and 214+00 of a maximum depth of 5 feet. After claimant's bid was accepted and the formal contract executed a line change was made which eliminated the peat between the first two stations.

In April, 1932 claimant commenced excavation on the project as relocated, and encountered peat between Stations 213+00 and 214+00 reaching a maximum depth of 11 feet, and of a maximum depth between Stations 152+00 and 155+50 of 27 feet. Claimant notified respondent of the increased quantity of peat found and was instructed to proceed to remove same. The total amount of peat replacement on the project turned out to be 22,857 cubic yards instead of 2,500 cubic yards as approximated at the time claimant submitted his final bid.

Respondent has paid claimant for the entire 22,857 cubic yards of peat replacement at the contract price of 74c per cubic yard.

Claimant has heretofore been paid $198,523.61 and now seeks as extra compensation the difference between the amount received for the replacement of the 22,857 cubic yards of peat at 74c per cubic yard ($16,914.18) and the amount which it represents the costs to have been of extra excavating of the additional amount of peat found. The work of removing the peat was done under an arrangement between claimant and the Thomas McQueen Company under which the latter agreed to remove the 2,500 cubic yards at 74c per cubic yard and the balance of the 22,857 cubic yards to be paid for on the following basis:

1. The cost of the labor furnished.
2. Rental for equipment used. (Computed under Holoway schedule.)
3. Premiums on compensation insurance on employees on project.
4. Materials furnished.
5. Fifteen per cent on labor and materials for overhead and profit.

Respondent contends that acceptance by claimant of the last payment on the contract in chief operated as a release for all claims under the contract or for anything done or furnished in connection therewith. Respondent also contends that under the provisions of Article 4.3 of the Standard Specifications it had the advantage of calling for peat replacement in excess of the estimated 2,500 cubic yards, and that its liability of payment therefor would be at the contract price of 74c per cubic yard, providing the total amount of peat replacement did not exceed twenty-five (25) per cent of the amount of the entire contract; that the increase in this item to 22,857 cubic yards at 74c equals $16,914.18, which latter amount is not in excess of twenty-five (25) per cent of the entire amount of the contract, $198,523.61; that as claimant has been paid the said amount of $16,914.18 it has received the full amount due under its contract and is not entitled to an award.

Respondent also contends that the estimated quantity of peat replacement was not in the nature of a guaranty or warranty and that claimant was obligated to remove the additional amount of peat at the contract price.

We cannot agree with the contentions urged by the Attorney General in behalf of respondent. There is a radical

difference not only in the amount of work but in the manner in which the labor must be performed, and of the machinery used, in the removal of peat at a depth of 24 feet to 27 feet. When the State changed its advertisement for bids and called attention to the fact that it was eliminating the replacement of peat at a low depth and in a large quantity, the bidder was justified in replying upon the belief that the State had definitely determined the conditions and had found that there would be a comparatively small amount of peat at a slight depth. This is true to a much greater degree than if there had merely been one estimate made, and the variance had thereafter appeared. As stated by Justice Brandeis in the case of *United States* vs. *Spearin*, 248 U. S. 132—

"The responsibility of the owner is not overcome by the usual clauses requiring builders to visit the site, to check the plans and to inform themselves of the requirements of the work * * * where it appears that the contractor was misled by erroneous statements in the specifications."

In the case of *Sartoris* vs. *Utah Construction Company*, 21 Federal (2d) 1, the specifications indicated solid and loose rock. When the plaintiff started work he found there was a formation of unusually fine loose sand, which greatly increased the cost of his excavation and construction work. The court there said:

"As we read the language, it was equivalent to saying to prospective bidders or contractors. 'You may bid in the expectation,' or 'in submitting your bids and in contracting, you may assume, that part of the tunnel excavation will be in earth formation and the remainder will be in solid rock, with possibly a short distance in loose rock, or a combination of all three; and by referring to the accompanying drawings you will see that the design is suited to such, and only such, a formation.' So read, it constituted a warranty."

In the above case the court held that the plaintiff was entitled to recover for the extra work. Respondent attempts to distinguish the Sartoris case by insisting that in the case at bar claimant did not encounter a material, different from that provided for in the contract. We believe that the changes which he did encounter were as material as those in the Sartoris case.

Claimants' Exhibit 1-B is a letter from the Division of Highways under date of August 19, 1931 in which the then Engineer of Design stated to claimant—

"Since sending out proposals (for the work in question) an error was discovered in the schedule of prices. The item of peat replacement under

this schedule was listed as 75,500 cubic yards. The correct quantity for this item is 2,500 cubic yards. Will you therefore, kindly correct the quantity of peat replacement listed in the schedule of price in the copy of the proposal which was sent to you?"

The record shows that when claimant was thus informed it relied on the representation made. From a stipulation filed herein it appears that claimant had made a bid in answer to the request therefor under date of May 12, 1931, wherein the peat replacement was estimated at 75,500 cubic yards, and in that bid claimant listed the peat replacement at 95c per cubic yard. Pursuant to the above notice and change claimant reduced its unit bid price from 95c per cubic yard to 74c per cubic yard. It also appears by the stipulation that the old plans showed peat between Stations 141 and 152 reaching a maximum of 24½ feet in depth; that peat between Stations 152 and 155½ on the relocated line actually reached a maximum depth of 27 feet.

Claimant contends that it should be compensated for the additional cost of peat replacement and that the amount should be the actual sum which it was required to actually pay in order to remove the peat in the extra quantity and at greater the depth encountered; that the amount of the claim submitted is the actual cost which it so incurred.

As above stated, we recognize that the removal of peat at a great depth is more costly per cubic yard than would be the removal of same near the surface. The cost per cubic yard is greater for many reasons as shown by the record herein. No better guide as to the computation of such difference can be found than the bids and prices quoted by claimant itself. When it expected to encounter 75,500 cubic yards at a depth of 24 feet it made a bid of 95c per cubic yard for peat replacement. When it was informed that the amount would be 2,500 cubic yards at an approximate depth of 5 feet it reduced its bid to 74c per cubic yard. The amount actually encountered was 22,857 cubic yards and the depth varied from 5 feet to a maximum of 27 feet.

The difference in the price bid by claimant is 21c per cubic yard. The additional amount of 22,857 cubic yards at 21c per cubic yard amounts to $4,799.97. This computation does not eliminate the 2,500 cubic yards for which claimant was willing to bid 74c, for we believe the price of 95c per cubic yard should, from the evidence, be the correct price on the

total quantity. We accordingly find that claimant is entitled to the additional sum of $4,799.97 in full payment of additional work encountered as hereinabove set forth.

An award is therefore hereby made in favor of claimant for the sum of $4,799.97.